EMILY T. KUWAHARA (SBN 252411)
    ekuwahara@crowell.com
URI NIV (SBN 307487)
    univ@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, CA  90071
Telephone: 213.622.4750
Facsimile: 213.622.2690

KRISTIN J. MADIGAN (SBN 233436)
    kmadigan@crowell.com
SUZANNE E. RODE (SBN 253830)
    srode@crowell.com
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA  94111
Telephone: 415.986.2800
Facsimile: 415.986.2827

[Additional Counsel Listed on Next Page]

Attorneys for Defendants
THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA and MICHAEL V. DRAKE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| AARON KHERIATY, M.D.,<br><br>                Plaintiff,<br><br>        v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a corporation, and MICHAEL V. DRAKE, in his official capacity as President of the UNIVERSITY OF CALIFORNIA,<br><br>                Defendants. | Case No. 8:21-cv-01367-JVS-KES<br><br>**DEFENDANTS' OBJECTIONS TO PLAINTIFF'S DECLARATIONS ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1  CHARLES F. ROBINSON (SBN 113197)
      charles.robinson@ucop.edu
2  NORMAN J. HAMILL (SBN 154272)
      norman.hamill@ucop.edu
3  KATHARINE ESSICK (SBN 219426)
      katharine.essick@ucop.edu
4  UNIVERSITY OF CALIFORNIA
   Office of General Counsel
5  1111 Franklin Street, 8th Floor
   Oakland, CA  94607
6  Telephone: 510.987.9800
   Facsimile: 510.987.9757
7
   Attorneys for Defendants
8  THE REGENTS OF THE UNIVERSITY OF
   CALIFORNIA AND MICHAEL V. DRAKE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1    Defendants The Regents of the University of California ("The Regents") and

2    President Michael V. Drake (collectively, "Defendants"), respectfully submit the

3    following written objections to the declarations of Aaron Kheriaty, M.D. ("Kheriaty

4    Declaration"); Peter A. McCullough, MD, MPH ("McCullough Declaration"); and

5    the University of California Faculty ("UC Faculty Declaration"), filed and served

6    on August 23, 2021, in support of Plaintiff's Motion for Preliminary Injunction

7    ("Motion").  Plaintiff's declarations and exhibits are largely comprised of

8    inadmissible evidence that is insufficient to support Plaintiff's Motion.

9    Although "the rules of evidence do not apply strictly to preliminary

10   injunction proceedings," *Herb Reed Enterprises, LLC v. Florida Entertainment

11   Management, Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013), courts may determine

12   the appropriate weight given to otherwise inadmissible evidence, *Myles v.

13   JPMorgan Chase Bank, N.A.*, No. EDCV1309036BROAGRX, 2013 WL

14   12084732, at *2 (C.D. Cal. Dec. 20, 2013).  Inadmissible evidence should only be

15   considered at the preliminary injunction phase "when to do so serves the purpose of

16   preventing irreparable harm before trial."  *Flynt Distrib. Co. v. Harvey*, 734 F.2d

17   1389, 1394 (9th Cir. 1984).  Plaintiff's evidence objected to here does not meet this

18   standard as its consideration will not facilitate the prevention of irreparable harm.

19   Little to no weight should be given to Plaintiff's declarations and the exhibits and

20   supporting references therein as they are replete with statements and evidence that

21   lack foundation and/or are irrelevant, improperly speculative and conclusory,

22   argumentative, inadmissible hearsay, or are otherwise objectionable.

23   Defendants respectfully request that Plaintiff's inadmissible evidence be

24   excluded by the Court in rendering its decision on Plaintiff's Motion for

25   Preliminary Injunction.  *See Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012)

26   ("A preliminary injunction . . . should not be granted unless the movant, *by a clear

27   showing*, carries the burden of persuasion." (emphasis in original) (quoting

28   *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam))).

CROWELL & MORING LLP
ATTORNEYS AT LAW

-1-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

I. **GENERAL OBJECTIONS TO THE DECLARATIONS OF AARON KHERIATY, M.D.; PETER A. MCCULLOUGH, M.D., MPH; AND UNIVERSITY OF CALIFORNIA FACULTY FILED ON AUGUST 23, 2021.**

The Declarations of Aaron Kheriaty, Peter McCullough, and University of California Faculty submitted in support of Plaintiff's Motion, should be excluded because the three declarations and their references and exhibits are teeming with statements irrelevant to Plaintiff's claims. Fed. R. Evid. § 401. Each of the declarations contain unrelated information regarding medical ethics, flu vaccines, and other viruses that have no probative value for determining whether a preliminary injunction is warranted for Plaintiff's claims regarding the Defendants' COVID-19 vaccine policy. Such irrelevant statements should be disregarded. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."); *K & N Eng'g, Inc. v. Spectre Performance*, No. EDCV 09-01900-VAP, 2011 WL 4387094, at *1 (C.D. Cal. Sept. 20, 2011) ("[T]he Court . . . has independently considered the admissibility of the evidence [related to a preliminary injunction motion] . . . and has not considered facts that are irrelevant.").

   A. **The Declarations Should Be Excluded Because the Declarants Offer No Basis for Their Opinions.**

In addition to the specific objections listed below, Defendants object to these declarations because they state no basis for the declarants' opinions, and because the declarants lack the required expertise in the relevant field.

Experts are to base their opinions "on facts and data . . . that the expert has been made aware of or personally observed." Fed. R. Evid. § 703. Here, because of the joint nature of the UC Faculty declaration, it is impossible to determine whether the UC Faculty declarants have personal knowledge of each and every one of the purported facts, data, and opinions included in their declaration. Although they do not explicitly purport to offer expert opinion about COVID-19 immunology

CROWELL & MORING LLP
ATTORNEYS AT LAW

-2-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

and epidemiology, even assuming that they are purporting to do so, their declarations state no basis or foundation whatsoever for their opinions offered or stated, only that they have "personal knowledge" of the facts or information contained in the declaration.  *See* UC Faculty Decl. ¶ 1.  The Kheriaty and McCullough declarations are similarly deficient.  *See* Kheriaty Decl. ¶ 1; McCullough Decl. ¶ 1.

> **B.      The Declarations Should Be Excluded Because the Declarants Lack the Required Expertise in the Relevant Field.**

Because Kheriarty, McCullough, and the UC Faculty declarants (Joseph Ladapo, MD, PhD; John Patrick Whelan, MD, PhD; Laszlo G. Boros, MD; Carole Browner, PhD, MPH; Aditi Bhargava, PhD; Gabriel Vorobiof) fail to state a proper basis or foundation for their opinions, *see* Fed. R. Evid. § 703, their opinions are improper expert testimony and should be excluded by the Court to the extent they rely on their "knowledge, skill, experience, training, or education" as reasoning for their opinion, Fed. R. Evid. § 702.

Trial courts have a crucial gatekeeping responsibility to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.  "The proponent of the expert testimony bears the burden of establishing by a preponderance of the evidence that the expert testimony is admissible under Rule 702." *Laux v. Mentor Worldwide, LLC*, 295 F. Supp. 3d 1094, 1097 (C.D. Cal. 2017), *aff'd*, 786 F. App'x 84 (9th Cir. 2019) (citation omitted).

The declarants lack the required expertise in the relevant field to opine on the topics discussed in their declarations.[1]  The declarants are a psychiatrist (Kheriarty), cardiologists (McCullough and Vorobiof), rheumatologist (Whelan),

---

[1] Because the declarants are not qualified to explain and interpret the medical journal articles and other references they rely on, these materials also raise hearsay concerns to the extent they are offered for their truth.  Fed. R. Evid. § 802.

CROWELL & MORING LLP
ATTORNEYS AT LAW

-3-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

endocrinologist (Boros), anthropologist (Browner), and reproductive scientist (Bhargava).  They are not immunologists or epidemiologists such that they can accurately and reliably opine as experts on immunity to or transmission of COVID-19.  *See In re Toy Asbestos*, No. 19-CV-00325-HSG, 2021 WL 1111226, at *2-3 (N.D. Cal. Mar. 23, 2021) (finding pulmonologist not qualified expert to opine on asbestos-related issues despite having "reviewed articles in this area" and "years of medical experience diagnosing and treating asbestos-related diseases" where party "fail[ed] to explain how [the doctor's] knowledge, skill, experience, training, and education as a pulmonologist somehow provides relevant insight into what was historically known or knowable about the hazards associated with asbestos").  In the case of the UC Faculty, their declaration does not describe or explain their qualifications or experiences at all, let alone how those qualifications make them experts in immunology and epidemiology for COVID-19.  The Kheriaty and McCullough declarations are also deficient in their explanation of their relevant expertise.  McCullough spends one paragraph providing a cursory description of his publications on COVID-19 treatment and testimony before state and federal legislatures.  McCullough Decl. ¶ 12.  Similarly, Kheriaty spends a single paragraph summarily describing his participation in the creation of ethics-related COVID-19 treatment allocation policies and his membership on a local COVID-19 task force.  Kheriaty Decl. ¶ 9.  Simply put, just because the declarants have previously addressed COVID-19 related topics (ethics and treatment) and reviewed scientific literature does not make them experts on the topic of COVID-19 immunology and epidemiology.  *In re Toy Asbestos*, 2021 WL 1111226, at *3 (noting that a pulmologist who "provides detailed information regarding what was known within the medical and scientific communities regarding malignant mesothelioma . . . [and] compiled information regarding the government and Navy's use of asbestos and their purported knowledge of its health hazards" does not make her an asbestos expert).

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-4-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO
PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

To the extent that Plaintiff's declarants are not experts able to opine on COVID-19 immunology and epidemiology and are instead lay witnesses, their declarations also are improper opinion testimony because they include "scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. § 701.  *See also Foreman v. Freedman*, No. 11-CV-1187-MMA (RBB), 2013 WL 12184328, at *4 n.7 (S.D. Cal. Dec. 20, 2013), *aff'd*, 653 F. App'x 885 (9th Cir. 2016) ("Plaintiffs here have offered only technical medical documents which necessarily require expert medical testimony to explain. . . .  Lay witnesses are precluded from expressing opinions based on scientific, technical, or other specialized knowledge."); *Gyrodata Inc. v. Atl. Inertial Sys. Inc.*, No. CV087897GHKFMOX, 2011 WL 13116732, at *3 (C.D. Cal. Oct. 11, 2011) ("Treating doctors may testify as lay witnesses when describing a medical condition, however, their opinions fall within Rule 702 when they are used to explain the causation of that condition. . . .  Indeed, any opinion as to the causation of a medical condition would necessarily be 'based on scientific, technical, or other specialized knowledge.'").

For the reasons stated above, the declarations should be excluded in their entirety.

## II.    SPECIFIC OBJECTIONS TO PLAINTIFF'S DECLARATIONS

Plaintiff's declarations are also objectionable on numerous other grounds. Specific objections are set forth below with respect to each declaration:

### A.    Specific Objections to the Declaration of Aaron Kheriaty (filed August 23, 2021).

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
| --- | --- |
| 1.    The University of California ("UC") enacted a new policy, finalized on July 15, 2021 to "facilitate the protection of the health and safety of the University community" by ensuring that individuals who return to campus have immunity to the virus that causes | A.    Misstates the evidence (Fed. R. Evid. §§ 403, 1002).  The referenced exhibit, which is a written document, speaks for itself. |

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-5-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| COVID-19. This policy mandates COVID-19 vaccinations in order to access UC's locations and programs. Attached to this declaration as Exhibit B is a true and correct copy of the mandate.<br><br>(Declaration of Plaintiff Aaron Kheriaty, M.D. ISO Plaintiff's Motion for Preliminary Injunction ("Kheriaty Decl.") ¶ 3) | B.    Lacks foundation; assumes facts not in evidence; improper speculation. (Fed. R. Evid. §§ 602, 701). |
| 2.    In addition to serving as the plaintiff in this matter, I am offering as an expert witness my professional opinions regarding the University of California's Covid-19 vaccine policy. The opinions I express herein are based upon my medical education, training, research, and over 16 years of clinical experience as a physician and bioethicist, as well as my familiarity with the medical and bioethics literature.<br><br>(Kheriaty Decl. ¶ 5) | A.    Non-qualified expert opinion (Fed. R. Evid. § 702). Declarant lacks requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.    Irrelevant (Fed. R. Evid. § 401). The declared statement is not relevant to Plaintiff's claims. |
| 3.    As a medical ethicist I also rely on knowledge of ethical guidelines, landmark court cases, legal standards for informed consent, and familiarity with the relevant research literature.<br><br>(Kheriaty Decl. ¶ 8) | A.    Improper basis of expert opinion (Fed. R. Evid. § 703). Declarant's reliance on ethics is not reasonably relied on in the fields of epidemiology, immunology, or virology.<br><br>B.    Irrelevant (Fed. R. Evid. § 401). The declared statement is not relevant to Plaintiff's claims. |
| 4.    I have done extensive work on Covid-19-related public policy since the pandemic began. I am a member of the UC Office of the President (UCOP) Critical Care Bioethics Working Group, which developed several of the University of California's Covid policies, including, (1) Allocation of Scarce Critical Resources under Crisis Standards of Care, which is guidance for all UC Health hospitals in the allocation of ventilators during the Covid-19 pandemic; (2) Allocation Guidelines for Remdesivir if Demand Outstrips Supply, and (3) Covid-19 | A.    Non-qualified expert opinion (Fed. R. Evid. § 702). Declarant lacks requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.    Irrelevant (Fed. R. Evid. § 401). The declared statement is not relevant to Plaintiff's claims. |

CROWELL & MORING LLP
ATTORNEYS AT LAW

-6-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| Vaccine Allocation Institutional Guidelines.  Since 2020 I have also served as a consultant to the California Department of Public Health on their allocation of Bamlanivimab during Covid-19 pandemic and on the California SARSCoV-2 Pandemic Crisis Care Guidelines.  I am also a member of the Covid-19 Vaccine Task Force for the County of Orange Healthcare Agency.<br><br>(Kheriaty Decl. ¶ 9) | |
| 5.      In my professional opinion, the UC vaccine policy violates the principles of medical ethics in unnecessarily mandating vaccination for individuals who have recovered from COVID-19.<br><br>(Kheriaty Decl. ¶ 11) | A.      Irrelevant (Fed. R. Evid. § 401).  The declared statement is not relevant to Plaintiff's claims. |
| 6.      Extensive scientific data demonstrates that such individuals have robust immunity as a result of having been exposed to the SARS-CoV-2 virus and may suffer worse adverse effects after vaccination than individuals not previously exposed to the virus.  The evidence shows the infection caused by the SARS-CoV-2 virus in humans produces complete and durable immunity, and natural immunity induced by the virus is comparable to or better than vaccination-induced immunity.  In unnecessarily and unjustifiably mandating vaccination of this population, the policy subjects these individuals to unnecessary risks without commensurate benefit, either to the individuals or the community as a whole.  In its refusal to recognize natural immunity, the UC Vaccine Policy violates the fundamental tenants of medical ethics and lacks a rational basis.<br><br>(Kheriaty Decl. ¶ 11) | A.      Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703).  Declarant lacks requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.      Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.      Lacks foundation; assumes facts not in evidence; vague, ambiguous, and misleading; improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).  The declared statement does not identify the specific "evidence" relied on to be able to verify what the evidence "demonstrates" or "shows," determine the reliability of the evidence, or draw conclusions therefrom.  The declared statement also does not identify specific "risks" or "benefits" considered to be able to verify what the evidence "demonstrates" or "shows," determine the reliability of the evidence, or draw conclusions therefrom.  Vague and ambiguous regarding "robust." |

CROWELL & MORING LLP
ATTORNEYS AT LAW

-7-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
|  | D.      Argumentative regarding whether the policy "unnecessarily and unjustifiably mandates vaccination" (Fed. R. Evid. § 403).<br><br>E.      Misstates the evidence (Fed. R. Evid. §§ 403, 1002).  The referenced policy, which is a written document, speaks for itself.<br><br>F.      Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |
| 7.      The scientific research literature on Covid-19 demonstrates the strength of natural immunity following a SARS-CoV-2 infection, the robust extent of preexisting immunity to the SARS-CoV-2 virus, and the growing number of reported serious harms as a consequence of receiving the Covid-19 vaccine after a SARS-CoV-2 infection.<br><br>(Kheriaty Decl. ¶ 12) | A.      Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703).  Declarant lacks requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.      Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.      Lacks foundation; assumes facts not in evidence; vague, ambiguous, and misleading; improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).  The declared statement does not identify the "scientific research literature" relied on to be able to verify what the evidence "demonstrates," determine the reliability of the evidence, or draw conclusions therefrom. |
| 8.      As explained by Dr. Ryan Cole, a Mayo Clinic trained pathologist, 'Yes, our antibody levels drop over time, however, scientifically, the memory B cells that make antibodies have been proven to be present in our lymph nodes and bone marrow,"[1] Dr. Cole further explains, "They are primed and ready to produce a broad array of antibodies . . . exposure.  It would be physiologically, energetically impossible to maintain high antibody levels to all the pathogens we are constantly exposed to, and we would look like the 'swollen Stay-Puft marshmallow man' of lymph nodes, | A.      Inadmissible hearsay (Fed. R. Evid. § 802).<br><br>B.      Irrelevant (Fed. R. Evid. § 401).  The declared statement is not relevant to Plaintiff's claims. |

CROWELL<br>& MORING LLP<br>ATTORNEYS AT LAW

-8-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| constantly, if the immune system were required to do that."[2]<br><br>(Kheriaty Decl. ¶ 13) (citation omitted) | |
| 9.     In my professional opinion, the Complaint is accurate in its summary of the scientific and medical research on these issues.<br><br>(Kheriaty Decl. ¶ 14) | A.     Non-qualified expert opinion (Fed. R. Evid. § 702).  Declarant lacks requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.     Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.     Irrelevant (Fed. R. Evid. § 401). The declared statement is not relevant to Plaintiff's claims. |
| 10.     The UC's coercive mandate that Covid-19- recovered individuals receive a Covid-19 vaccine violates basic principles of medical ethics. Even if the vaccines receive full FDA approval, no sensible understanding of herd immunity can justify forcing vaccinations on those who have already had Covid-19. There is no evidence that vaccinating Covid-19-recovered individuals benefits others through reduced viral transmission and, in fact, the evidence is that it does not prevent viral infection and transmission. But even assuming that it did, that would use the recipients as a means to another end, which is unethical.<br><br>(Kheriaty Decl. ¶ 16) | A.     Non-qualified expert opinion (Fed. R. Evid. § 702).  Declarant lacks requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.     Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.     Lacks foundation; assumes facts not in evidence; vague, ambiguous, and misleading; improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704). The declared statement does not identify the data relied on to be able to verify what the "evidence" demonstrates, determine the reliability of the evidence, or draw conclusions therefrom.<br><br>D.     Irrelevant (Fed. R. Evid. § 401). The declared statement is not relevant to Plaintiff's claims.<br><br>E.     Argumentative regarding whether the policy is "coercive" or "unethical" as well as whether the UC policy is based on a "sensible understanding of herd immunity." (Fed. R. Evid. § 403) |

CROWELL & MORING LLP
ATTORNEYS AT LAW

-9-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 11.     Consider the analogy of nontherapeutic research, from which the research subject does not stand to benefit directly.  The central canon of medical ethics in this situation is the free and informed consent of the research subject, as articulated in the Nuremberg Code and the Helsinki Declaration.  Informed consent is likewise required for medical decisions in all adults of sound mind.  This is arguably the most deeply rooted doctrine in contemporary medical ethics.  A person may freely choose to accept medical risks for the benefit of others, as when one donates a kidney for transplant.  But there is no moral duty to do so.  This is why we do not harvest organs without consent, even if doing so would save many lives.  Those who make such sacrifices for others must truly be volunteers, not conscripts drafted by college administrators.<br><br>(Kheriaty Decl. ¶ 17) | A.     Irrelevant (Fed. R. Evid. § 401).  The declared statement is not relevant to Plaintiff's claims. |
| 12.     University leaders might claim that vaccine mandates are necessary to make faculty, staff and students "feel safe" enough to reopen campus.  This reasoning is specious.  Requiring the naturally immune to be vaccinated does not make anyone actually safer.  It is wrong to risk harming healthy people so that UC can peddle a psychological placebo to those who have not considered basic scientific facts.<br><br>(Kheriaty Decl. ¶ 18) | A.     Improper speculation (Fed. R. Evid. §§ 403, 602).<br><br>B.     Lacks foundation; assumes facts not in evidence (Fed. R. Evid. § 403, 602).<br><br>C.     Argumentative (Fed. R. Evid. § 403). |
| 13.     There is ample scientific evidence that natural immunity of Covid-19-recovered individuals is as good, and very likely superior, to vaccine-mediated immunity.  In an email sent to the UCI School of Medicine on July 17, 2021, the Associate Dean of Graduate Medical Education informed the faculty and residents, "There has been a substantial increase in the number of breakthrough infections among our UCI health care | A.     Non-qualified expert opinion (Fed. R. Evid. § 702).  Declarant lacks requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.     Improper subject of lay witness testimony (Fed. R. Evid. § 701). |

CROWELL & MORING LLP
ATTORNEYS AT LAW

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO
PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| workers, including residents and fellows (fully vaccinated individuals)." A true and correct copy of this July 17, 2021, email is attached hereto and incorporated herein as Exhibit D.  In an email sent to Medical Directors at UCI Health on July 22, 2021, CEO Chad T. Lefteris advices, "[t]he COVID-19 delta variant is now responsible for the majority (75%) of OC cases, including <u>several breakthrough vaccine cases</u>." A true and correct copy of this July 22, 2021, email is attached hereto and incorporated herein as Exhibit E (emphasis added).  A July 27, 2021 email sent to course directors at UCI confirmed that "due to continued and increasing concerns about the spread of COVID-19, even among vaccinated individuals, we will not be returning to the classrooms as had been expected for the past several month." A true and correct copy of this July 27, 2021 email is attached hereto and incorporated herein as Exhibit F.  By contrast, but there has been no such notice of increasing cases among those who have recovered from Covid-19.  This indicates that there is a material number of vaccinated individuals that are still acquiring symptomatic Covid-19, such that notice to the entire system about this issue was warranted, while no such notice has been necessary for the naturally immune.  <br><br>(Kheriaty Decl. ¶ 19) | C.      Inadmissible hearsay (Fed. R. Evid. § 802).  <br><br>D.      Best Evidence Rule (Fed. R. Evid. §§ 1002, 1003).  <br><br>E.      Lacks foundation; assumes facts not in evidence; vague, ambiguous, and misleading; improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704). The declared statement does not identify the "scientific evidence" relied on to be able to verify what the evidence demonstrates, determine the reliability of the evidence, or draw conclusions therefrom.  <br><br>F.      Irrelevant (Fed. R. Evid. § 401). The declared statement is not relevant to Plaintiff's claims. |
| 14.     Historically, the full safety profile of medications and vaccines may not but fully apparent until they are widely deployed in large populations. To mention just two recent examples, rofecoxib (Vioxx) was found to increase the risk of heart attack and stroke, side effects that did not manifest in the smaller clinical trials used for FDA approval.  <br><br>(Kheriaty Decl. ¶ 20) | A.      Irrelevant (Fed. R. Evid. § 401). The declared statement is not relevant to Plaintiff's claims.  <br><br>B.      Misstates the evidence; lacks foundation; assumes facts not in evidence; misleading; prejudicial (Fed. R. Evid. § 403). |

CROWELL & MORING LLP
ATTORNEYS AT LAW

-11-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 15.    Likewise, an influenza vaccine used in the 2009 swine flu epidemic, after it was rolled out in several European countries, was found to cause febrile convulsions and narcolepsy in children.<br><br>(Kheriaty Decl. ¶ 21) | A.    Irrelevant (Fed. R. Evid. § 401). The declared statement is not relevant to Plaintiff's claims.<br><br>B.    Misstates the evidence; lacks foundation; assumes facts not in evidence; misleading; prejudicial (Fed. R. Evid. § 403). |
| 16.    The underreporting to VAERS of anaphylaxis following COVID-19 vaccination is instructive. A three-year federal government funded study by Harvard Medical School which tracked 715,000 patients at Harvard Pilgrim Health Care found that "fewer than 1% of vaccine adverse events are reported."[5] So the actual number of adverse events due to the Covid-19 vaccines is most likely considerably higher.  According to the CDC, "Anaphylaxis after COVID-19 vaccination is rare and occurred in approximately **2 to 5 people per million** vaccinated in the United States based on events reported to VAERS."[6] This is in stark contrast to a recent study at Mass General Brigham that assessed anaphylaxis in a clinical setting after the administration of COVID-19 vaccines and found "severe reactions consistent with anaphylaxis occurred at a rate of **2.47 per 10,000 vaccinations**."[7]<br><br>(Kheriaty Decl. ¶ 25) (citations omitted) | A.    Lacks foundation; assumes facts not in evidence; improper speculation (Fed. R. Evid. § 403, 602).<br><br>B.    Inadmissible hearsay (Fed. R. Evid. § 802).<br><br>C.    Irrelevant (Fed. R. Evid. § 401). The declared statement is not relevant to Plaintiff's claims.<br><br>D.    Misstates the evidence; misleading; prejudicial (Fed. R. Evid. § 403). |
| 17.    The implication is that we have reason to believe the risks of a Covid-19 vaccine may outweigh the benefits for certain low-risk populations, including individuals who have recovered from Covid-19 infection. It is entirely reasonable, given these concerns, for a Covid-recovered person to decline vaccination.  But this is precisely what the coercive UC vaccine policy does not permit. | A.    Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703).  Declarant lacks requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.    Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.    Lacks foundation; assumes facts not in evidence; vague, ambiguous, and |

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| (Kheriaty Decl. ¶ 26) | misleading; improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704). The declared statement does not identify specific "risks" or "benefits" considered to be able to verify what the evidence implies, determine the reliability of the evidence, or draw conclusions therefrom.<br><br>D.     Argumentative regarding whether the policy is "coercive" (Fed. R. Evid. § 403).<br><br>E.     Misstates the evidence (Fed. R. Evid. §§ 403, 1002).  The referenced policy, which is a written document, speaks for itself.<br><br>F.     Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |
| 18.     Defenders of the UC vaccine policy might respond that provision is made for individuals who wish to refuse vaccination by means of the medical exemptions permitted in the vaccine policy.  However, the narrow scope of these medical exemptions is unjust and dangerous: the exemptions are so medically unsound and unduly restrictive that they create a clear and present danger to the health of those subject to these mandates.<br><br>(Kheriaty Decl. ¶ 27) | A.     Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703).  Declarant lacks requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.     Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.     Improper speculation (Fed. R. Evid. §§ 403, 602).<br><br>D.     Lacks foundation; assumes facts not in evidence (Fed. R. Evid. § 403, 602).<br><br>E.     Argumentative (Fed. R. Evid. § 403).<br><br>F.     Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |
| 19.     The scientific data demonstrates that the natural immunity acquired by previous Covid-19 infection is at least as durable and effective as that provided by the vaccines.  The data also shows that those who possess this natural immunity present no greater risk of transmitting the virus to others | A.     Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703).  Declarant lacks requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology. |

CROWELL & MORING LLP
ATTORNEYS AT LAW

-13-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| than those who have been vaccinated. The UC justifies its mandate by claiming this is the only effective way to maintain a safe campus environment. But jabbing students who are already immune contributes nothing whatsoever to campus safety.  All that it does, medically speaking, is create danger.<br><br>(Kheriaty Decl. ¶ 28) | B.      Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.      Misstates the evidence (Fed. R. Evid. §§ 403, 1002).  The referenced policy, which is a written document, speaks for itself.<br><br>D.      Improper speculation (Fed. R. Evid. §§ 403, 602).<br><br>E.      Vague and ambiguous (Fed. R. Evid. § 403) regarding "danger".<br><br>F.      Lacks foundation; assumes facts not in evidence (Fed. R. Evid. § 403, 602). |
| 20.      Several published studies suggest, moreover, a significantly increased risk of adverse reactions to the vaccine among those previously infected.[8]  There is no reason to put the thousands of UC faculty, staff, and students who possess natural immunity in such danger.<br><br>(Kheriaty Decl. ¶ 29) (citations omitted) | A.      Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703).  Declarant lacks requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.      Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.      Lacks foundation; assumes facts not in evidence; vague, ambiguous, and misleading; improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).  The declared statement is vague and ambiguous regarding the meaning of "significantly increased risk" and "danger."<br><br>D.      Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |
| 21.      The UC vaccine policy relies upon the CDC's guidelines for medical exemptions as if they constitute medical advice applicable in every case.  They do not. Though this may come as a surprise to many, the CDC is not a medical institution; it is a public health and disease prevention body. According to CDC's own mission statement, the agency focuses on | A.      Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703).  Declarant lacks requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.      Improper subject of lay witness testimony (Fed. R. Evid. § 701). |

CROWELL & MORING LLP
ATTORNEYS AT LAW

-14-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| "disease prevention and control, environmental health, and health promotion and health education activities."  It is not qualified and usually does not purport to offer professional medical opinions applicable to specific patients. From time to time, the CDC offers findings and recommendations that competent medical practitioners may consider in arriving at a professional medical judgment for a particular patient. In this respect, CDC guidelines are analogous to guidelines from other public health associations or medical societies: they are guidelines, not prescriptions." <br><br> (Kheriaty Decl. ¶ 30) | C.     Misstates the evidence (Fed. R. Evid. §§ 403, 1002).  The referenced policy, which is a written document, speaks for itself. <br><br> D.     Improper speculation (Fed. R. Evid. §§ 403, 602). <br><br> E.     Lacks foundation; assumes facts not in evidence (Fed. R. Evid. § 403, 602). <br><br> F.     Irrelevant (Fed. R. Evid. § 401). The declared statement is not relevant to Plaintiff's claims. <br><br> G.     Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |
| 22.     The UC vaccine policy is unsound not just because it follows various CDC recommendations as if these constitute sound individualized medical advice for every patient.  It is going all-in on the mistaken conception of the CDC as a super-doctor.  The policy would limit medical exemptions to "contraindications and precautions" recognized by the CDC or the vaccine's manufacturer.  There is no sound medical basis, however, for doing so, especially since (again) the CDC does not practice medicine.  The CDC's list of contraindications was never meant to be comprehensive or exhaustive, but merely representative of the most common situations in which caution is warranted. <br><br> (Kheriaty Decl. ¶ 31) | A.     Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703).  Declarant lacks requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology. <br><br> B.     Improper subject of lay witness testimony (Fed. R. Evid. § 701). <br><br> C.     Misstates the evidence (Fed. R. Evid. §§ 403, 1002).  The referenced policy, which is a written document, speaks for itself. <br><br> D.     Improper speculation (Fed. R. Evid. §§ 403, 602). <br><br> E.     Lacks foundation; assumes facts not in evidence (Fed. R. Evid. § 403, 602). <br><br> F.     Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |
| 23.     But the danger arises from this criterion when viewed in connection with the unjustifiably narrow limitations on exemptions overall, as described above.  The purpose of any exceptions for a vaccine is to avoid or reduce the risk of allergic or other serious reactions in the first place.  One | A.     Misstates the evidence (Fed. R. Evid. §§ 403, 1002).  The referenced policy, which is a written document, speaks for itself. <br><br> B.     Improper speculation (Fed. R. Evid. §§ 403, 602). |

CROWELL & MORING LLP
ATTORNEYS AT LAW

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| should not have to actually experience a serious adverse reaction or anaphylaxis prior to being excused from taking the vaccine, if a physician has already determined that one may be at enhanced risks for serious adverse effects based upon an individualized medical evaluation.<br><br>(Kheriaty Decl. ¶ 33) | C.    Lacks foundation; assumes facts not in evidence (Fed. R. Evid. § 403, 602).<br><br>D.    Vague and ambiguous (Fed. R. Evid. § 403) regarding "serious adverse effects."<br><br>E.    Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |
| 24.    As the UC vaccine policy shows, however, all this is deemed irrelevant when it comes to Covid-19 vaccines. For Covid-19 and this alone, the exceptions in the Policy amounts to a Catch-22: it effectively requires getting an initial dose and having a reaction that could potentially provide the data needed to be exempt from taking the vaccine again.<br><br>(Kheriaty Decl. ¶ 34) | A.    Misstates the evidence (Fed. R. Evid. §§ 403, 1002).  The referenced policy, which is a written document, speaks for itself.<br><br>B.    Improper speculation (Fed. R. Evid. §§ 403, 602).<br><br>C.    Lacks foundation; assumes facts not in evidence (Fed. R. Evid. § 403, 602).<br><br>D.    Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |
| 25.    The notion that some Covid-recovered individuals may harm others by not getting the Covid-19 vaccine is also not grounded in sound ethical reasoning or empirical evidence.<br><br>(Kheriaty Decl. ¶ 35) | A.    Irrelevant and prejudicial (Fed. R. Evid. §§ 401, 403).  The declared statement is not relevant to Plaintiff's claims. |
| 26.    This is why we would never harvest organs from persons without their consent even if by doing so we could save many lives.  Organ donation must be a voluntary act.  It is what ethicists refer to as "supererogatory" - that is, an act that goes above and beyond what is required by duty or justice.<br><br>(Kheriaty Decl. ¶ 37) | A.    Irrelevant (Fed. R. Evid. § 401). The declared statement is not relevant to Plaintiff's claims. |
| 27.    For example, we know with statistical certainty that thousands will die every year in motor vehicle accidents; and we know with statistical | A.    Irrelevant (Fed. R. Evid. § 401). The declared statement is not relevant to Plaintiff's claims. |

CROWELL<br>& MORING LLP<br>ATTORNEYS AT LAW

-16-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
| --- | --- |
| certainty that we could save every one of those lives by lowering the speed limit on every road to 15 miles per hour.  The fact that we do not do so does not mean we intend the death of all those people, nor that we don't care about them, nor that we are guilty of negligence or manslaughter.  Applying this analogy to individual rather than public policy decisions, one could lower the risk of injury or death to fellow citizens on the road by driving a Mini Cooper or a Fiat rather than a Hummer or an Escalade, since a smaller car is statistically less likely to harm others in the event of a collision.  But one is under no moral obligation to drive a smaller car for the sake of this risk reduction to others.  To mention one more medical example, in 2020 in the U.S. we had twice as many deaths from cardiovascular disease (691K) as deaths [with] Covid (345K).  Coercive public health mandates would save thousands of lives by coercively enforcing a Mediterranean diet and daily exercise to bring down cardiovascular deaths.  Of course, such measures in the name of public health would not be justifiable, though they would arguably be less of a bodily intrusion than a mandated vaccine injection.<br><br>(Kheriaty Decl. ¶ 38) | |
| 28.    I am frustrated and negatively impacted by the prospect of being forced to allow an invasion of the integrity of my body or be banned from continuing my employment at UCI.<br><br>(Kheriaty Decl. ¶ 39) | A.    Vague and ambiguous (Fed. R. Evid. § 403) regarding phrase "forced to allow" and term "integrity." |
| 29.    In summary, there is no medical or ethical justification for mandating Covid vaccines for Covid-recovered individuals.  We must maintain our integrity under pressure.  It is precisely in dire situations, such as wars or pandemics, that we are most sorely tempted to abandon ethical principles. | A.    Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703).  Declarant lacks requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology. |

CROWELL & MORING LLP
ATTORNEYS AT LAW

-17-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| Authorities rushing to implement mandatory vaccination protocols are ignoring available scientific data, basic principles of immunology, and elementary ethical norms.  Even if some sincerely think that these regimes are needed to open safely, that belief neither makes it so nor justifies coercive policies that steamroll fundamental liberties.<br><br>(Kheriaty Decl. ¶ 40) | B.      Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.      Misstates the evidence (Fed. R. Evid. §§ 403, 1002).  The referenced policy, which is a written document, speaks for itself.<br><br>D.      Improper speculation (Fed. R. Evid. §§ 403, 602).<br><br>E.      Lacks foundation; assumes facts not in evidence (Fed. R. Evid. § 403, 602).<br><br>F.      Improper legal conclusion (Fed. R. Evid. §§ 701, 704).<br><br>G.      Vague and ambiguous (Fed. R. Evid. § 403) regarding the terms "we" and "integrity."<br><br>H.      Irrelevant (Fed. R. Evid. § 401).<br><br>I.      Argumentative regarding whether policy is "coercive" (Fed. R. Evid. § 403). |
| 30.      This UC's vaccine policy, in refusing to recognize the value of natural immunity, unjustly discriminates against Covid-recovered patients, subjecting them to unnecessary risks without commensurate benefits, either to themselves or others.  In doing so, the policy violates basic tenets of medical ethics, defies logical reasoning, and, as I am advised by my lawyers, violates the equal protection of all citizens as guaranteed by the Constitution's 14th Amendment.<br><br>(Kheriaty Decl. ¶ 41) | A.      Misstates the evidence (Fed. R. Evid. §§ 403, 1002).  The referenced policy, which is a written document, speaks for itself.<br><br>B.      Lacks foundation; assumes facts not in evidence; vague, ambiguous, and misleading; improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).  The declared statement does not identify specific "risks" or "benefits" and is further vague and ambiguous regarding the term "value".<br><br>C.      Improper legal conclusion (Fed. R. Evid. §§ 701, 704).<br><br>D.      Irrelevant (Fed. R. Evid. § 403). |

CROWELL & MORING LLP
ATTORNEYS AT LAW

-18-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

**B.      Specific Objections to the Declaration of Peter A. McCullough, M.D., MPH (filed August 23, 2021).**

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 1.      The immunity to SARS-CoV-1 has been lifelong over the observation period thus far in humans which is 17 years reflecting the duration of immunity that is likely from SARSCoV-2.<br><br>(McCullough Decl. ¶ 14) (citation omitted) | A.      Improper speculation (Fed. R. Evid. § 403).<br><br>B.      Irrelevant (Fed. R. Evid. § 401). The declared statement is not relevant to Plaintiffs' claims.<br><br>C.      Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>D.      Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703).  Declarant lacks requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology. |
| 2.      This results in more protective immunity for those who have had a natural infection as compared to those who have been vaccinated.<br><br>(McCullough Decl. ¶ 15) | A.      Improper speculation (Fed. R. Evid. § 403).<br><br>B.      Irrelevant (Fed. R. Evid. § 401). The declared statement is not relevant to Plaintiffs' claims. |
| 3.      Specifically, in such an individual, there is no evidence that SARS-CoV-2 can be acquired, carried, or transmitted to another individual.<br><br>(McCullough Decl. ¶ 16) | A.      Improper speculation (Fed. R. Evid. §§ 403, 702, 703).<br><br>B.      Lacks foundation; assumes facts not in evidence (Fed. R. Evid. §§ 403, 702, 704).<br><br>C.      Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>D.      Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703).  Declarant lacks requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology. |

CROWELL & MORING LLP
ATTORNEYS AT LAW

-19-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 4.      Despite the endless search by the media to find cases of severe reinfection, they have failed to find it. To my knowledge, there has never been a verified second case beyond 90 days with similar or worse cardinal symptoms and confirmatory PCR/Antigen/Sequencing test in a case where the patient already had a well-documented first case with acute illness.<br><br>(McCullough Decl. ¶ 17) | A.      Improper speculation (Fed. R. Evid. §§ 403, 702, 703).<br><br>B.      Lacks foundation; assumes facts not in evidence (Fed. R. Evid. §§ 403, 702, 704).<br><br>C.      Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>D.      Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703).  Declarant lacks requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology. |
| 5.      Vaccinating the previously infected is also not without risk. Mathioudakis, et al. reported that in 2002 patients who underwent vaccination with either mRNA-based, or vector-based COVID-19 vaccines, COVID-recovered patients who were needlessly vaccinated had higher rates of vaccine reactions.[10]<br><br>(McCullough Decl. ¶ 18) (citation omitted) | A.      Inadmissible hearsay (Fed. R. Evid. § 802).<br><br>B.      Vague, ambiguous, and misleading; improper speculation (Fed. R. Evid. §§ 403, 702, 704).  The declared statement does not identify specific "risks" and is further vague and ambiguous regarding the term "reactions."<br><br>C.      Argumentative regarding whether recovered individuals are "needlessly vaccinated" (Fed. R. Evid. § 403).<br><br>D.      Irrelevant (Fed. R. Evid. § 401). The declared statement is not relevant to Plaintiffs' claims. |

CROWELL & MORING LLP
ATTORNEYS AT LAW

-20-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 6.      Natural immunity is durable complete and robust in the case where a patient has a well-defined illness with the characteristic signs and symptoms of acute COVID-19 and the diagnosis is confirmed by nasal/oral PCR, nasal/oral antigen, or sequencing tests that are FDA cleared as diagnostic aids for COVID-19 illness. In less well characterized cases where there is suspected COVID-19 or asymptomatic individuals and positive serologies for SARS-CoV-2, then the risk of COVID-19 is negligible.  Thus, prior COVID-19 illness has no opportunity for benefit with indiscriminate vaccination.[11]<br><br>(McCullough Decl. ¶ 19) (citation omitted) | A.      Vague, ambiguous, and misleading; improper speculation (Fed. R. Evid. §§ 403, 702, 704).  The declared statement is vague and ambiguous regarding the phrase "opportunity for benefit."<br><br>B.      Argumentative regarding whether vaccinating recovered individuals is "indiscriminate vaccination" (Fed. R. Evid. § 403).<br><br>C.      Irrelevant (Fed. R. Evid. § 401). The declared statement is not relevant to Plaintiffs' claims<br><br>D.      Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>E.      Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703).  Declarant lacks requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology. |
| 7.      There are also studies demonstrating harm to vaccinating individuals previously infected with SARS-CoV-2.  Thus, it is my opinion that the COVID-19 vaccination is contraindicated in COVID-19 survivors.<br><br>(McCullough Decl. ¶ 20) | A.      Irrelevant (Fed. R. Evid. § 401). The declared statement is not relevant to Plaintiffs' claims.<br><br>B.      Lacks foundation; assumes facts not in evidence; vague, ambiguous, and misleading; improper speculation (Fed. R. Evid. §§ 403, 702, 704).  The declared statement does not identify specific "studies" and is further vague and ambiguous regarding the term "harm."<br><br>C.      Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>D.      Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703).  Declarant lacks requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology. |

**C.     Specific Objections to the Declaration of University of California Faculty (filed August 23, 2021).**

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-21-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO
PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 1.      We are a group of UC faculty writing regarding vaccination for individuals who have recovered from COVID-19 (the "naturally immune").<br><br>(Declaration University of California Faculty ISO Plaintiff's Motion for Preliminary Injunction ("UC Faculty Decl."), ¶ 2) | A.      Non-qualified expert opinion (Fed. R. Evid. § 702).  Declarants collectively lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.      Improper basis of expert opinion (Fed. R. Evid. § 703).  Declaration does not indicate that each declarant is personally aware of all facts stated within the joint declaration or whether the declaration is an amalgamation of their individual knowledge.<br><br>C.      Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>D.      Irrelevant (Fed. R. Evid. § 401).  The declared statement is not relevant to Plaintiff's claims.<br><br>E.      Prejudicial, confusing, and misleading (Fed. R. Evid. § 403). |
| 2.      Extensive scientific data demonstrates that naturally immune individuals have robust immunity as a result of having been exposed to the SARS-CoV-2 virus and may suffer worse adverse effects after vaccination than individuals not previously exposed to the virus.<br><br>(UC Faculty Decl. ¶ 2) | A.      Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703).  Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.      Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.      Lacks foundation; assumes facts not in evidence; vague, ambiguous, and misleading; improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).  The declared statement does not identify the "scientific data" relied on to be able to verify what it "demonstrates," determine the reliability of the evidence, or draw conclusions therefrom.  The declared statement also does not identify specific "risks" or "benefits" considered to be able to verify what the evidence "demonstrates" or "shows," determine the reliability of |

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| **MATERIAL OBJECTED TO** | **GROUNDS FOR OBJECTION** |
|---|---|
| | the evidence, or draw conclusions therefrom.  Vague and ambiguous regarding "robust" and "adverse effects."<br><br>D.      Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |
| 3.      We base these opinions on careful reviews of published and preprint medical literature.<br><br>(UC Faculty Decl. ¶ 3) | A.      Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.      Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C. |
| 4.      Our declaration addresses three areas:<br><br>A. The strength of natural immunity appearing subsequent to a SARS-CoV-2 infection.<br><br>B. Whether the Covid-19 vaccine can prevent infection and transmission of SARS-CoV-2.<br><br>C. Concerns about the growing number of reported serious harms after receiving the Covid-19 vaccine.<br><br>(UC Faculty Decl. ¶ 4) | A.      Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.      Improper subject of lay witness testimony (Fed. R. Evid. § 701). |
| 5.      University of California policy currently indicates that individuals recently diagnosed with COVID-19 "may be eligible for a temporary Medical Exemption (and, therefore, a temporary Exception), for up to 90 days after your diagnosis and certain treatments."<br><br>(UC Faculty Decl. ¶ 6.) | A.      Inadmissible hearsay (Fed. R. Evid. § 802).<br><br>B.      Misstates the evidence (Fed. R. Evid. §§ 403, 1002).  The referenced policy, which is a written document, speaks for itself. |
| 6.      The 90-day temporary Medical Exemption is therefore not supported by | A.      Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). Collectively, the declarants lack requisite knowledge, skill, experience, |

CROWELL & MORING LLP
ATTORNEYS AT LAW

-23-

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| scientific data and underestimates the durability of natural immunity.<br><br>(UC Faculty Decl. ¶ 6.) | training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.     Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.     Improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).<br><br>D.     Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |
| 7.     As such, it is a more extensive host defense system than the limited array of antibodies to the spike protein generated by COVID-19 vaccines.  The natural immunity produced by the closely related SARS-CoV-1 has been documented to last for years.[8] This is evident from numerous studies . . . .<br><br>(UC Faculty Decl. ¶ 8) (citations omitted) | A.     Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.     Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.     Improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).<br><br>D.     Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |
| 8.     After a natural SARS-CoV-2 infection, even in cases where antibody responses have not met the threshold for being "reactive" in the approximately 100 commercial assays, the evidence is clear that cellular based immunity is present.  This evidence reflects that clinical infection alone, without either antibody or cellular based testing afterwards, is sufficient to identify an individual who is either no longer susceptible or minimally susceptible to COVID-19, similar to the vaccines.[20]<br><br>(UC Faculty Decl. ¶ 10) (citation omitted) | A.     Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.     Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.     Improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).<br><br>D.     Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |
| 9.     Importantly, in such individuals who have had natural SARS-CoV-2 infections, the evidence reflects that they are less likely to again acquire, carry, and transmit the virus to another individual when compared to those | A.     Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues |

CROWELL & MORING LLP
ATTORNEYS AT LAW

-24-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| vaccinated for this virus.[21] This is evident from numerous studies[ ] . . . .<br><br>(UC Faculty Decl. ¶ 11) (citations omitted) | related to epidemiology, immunology, or virology.<br><br>B.     Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.     Improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).<br><br>D.     Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |
| 10.     In the 19 months since the COVID-19 virus first appeared in the United States, doctors and scientists have not identified any naturally immune individual that was re-infected with and transmitted this virus to anyone.<br><br>(UC Faculty Decl. ¶ 12) | A.     Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.     Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.     Lacks foundation; assumes facts not in evidence; misleading; improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).<br><br>D.     Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |
| 11.     Irish researchers recently published a review of eleven cohort studies with over 600,000 total recovered COVID patients, not all of whom were well defined and may have had suspected COVID-19 with positive serologies later on who were followed up with over ten months.  They found the reinfection rate to be 0.27% "with no study reporting an increase in the risk of reinfection over time."[30]  Based on this data, the researchers were able to assert that "naturally acquired SARS-CoV-2 immunity does not wane for at least 10 months post-infection."[31] The study also did not identify any case of reinfection of SARS-CoV-2 that resulted in further transmission of the virus.<br><br>(UC Faculty Decl. ¶ 13) (citations omitted) | A.     Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.     Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.     Lacks foundation; assumes facts not in evidence; misleading; improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).<br><br>D.     Inadmissible hearsay (Fed. R. Evid. 802).<br><br>E.     Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |

CROWELL & MORING LLP
ATTORNEYS AT LAW

-25-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 12.     Based on this data, prior infection with SARS-CoV-2 appears to provide greater than 99% efficacy from reinfection, which is far greater protection than the efficacy from vaccine immunity which, in an optimal clinical trial setting, provided no greater than between 67% and 95% efficacy, depending on the COVID-19 vaccine.<br><br>(UC Faculty Decl. ¶ 14) (citations omitted) | A.     Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.     Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.     Lacks foundation; assumes facts not in evidence; misleading; improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).<br><br>D.     Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |
| 13.     A recent article aptly explained why infection-induced immunity to SARSCoV-2 is much deeper and broader than vaccine immunity:<br><br>A natural infection induces hundreds upon hundreds of antibodies against all proteins of the virus, including the envelope, the membrane, the nucleocapsid, and the spike…Dozens upon dozens of these antibodies neutralize the virus when encountered again.  Additionally, because of the immune system exposure to these numerous proteins (epitomes), our T cells mount a robust memory, as well. Our T cells are the 'marines' of the immune system and the first line of defense against pathogens. T cell memory to those infected with SARSCOV1 is at 17 years and running still….<br><br>In vaccine-induced immunity…we mount an antibody response to only the spike and its constituent proteins … [and] this produces much fewer neutralizing antibodies, and as the virus preferentially mutates at the spike, these proteins are shaped differently and antibodies can no | A.     Impermissible hearsay (Fed. R. Evid. § 802).<br><br>B.     Irrelevant (Fed. R. Evid. § 401). |

CROWELL & MORING LLP
ATTORNEYS AT LAW

-26-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| longer 'lock and key' bind to these new shapes.<br><br>(UC Faculty Decl. ¶ 16) | |
| 14.    The study reported zero cases of infection among those that previously had COVID-19.<br><br>(UC Faculty Decl. ¶ 19.) | A.    Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.    Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.    Lacks foundation; assumes facts not in evidence; misleading; improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).<br><br>D.    Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |
| 15.    This forced the Director of the CDC, Rochelle Walensky, to admit that individuals vaccinated for COVID-19, while having less symptoms, can still become infected with and transmit the virus. [39] Dr. Walensky admitted that **"what [the COVID-19 vaccines] can't do anymore is prevent transmission."**[40] After this admission, Wolf Blitzer asked Dr. Walensky if "you get covid, you're fully vaccinated, but you are totally asymptomatic, you can still pass on the virus to someone else, is that right?" and Dr. Walensky answers **"that is exactly right**." [41]<br><br>(UC Faculty Decl. ¶ 20) (citation omitted) | A.    Impermissible hearsay (Fed. R. Evid. § 802).<br><br>B.    Irrelevant (Fed. R. Evid. § 401).<br><br>C.    Lacks foundation; assumes facts not in evidence; misleading; improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704). |
| 16.    While COVID-19 vaccinees can be asymptomatic carriers and spreaders of SARS-CoV-2, based on all available data to date, the naturally immune have a near zero risk of becoming reinfected with and transmitting SARS-CoV-2.<br><br>(UC Faculty Decl. ¶ 21) | A.    Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology. |

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| | B.      Improper subject of lay witness testimony (Fed. R. Evid. § 701). |
| | C.      Lacks foundation; assumes facts not in evidence; vague, ambiguous, and misleading; improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).  Vague and ambiguous regarding the terms "risk." |
| 17.      The COVID-19 vaccine is not without risk, particularly for those previously infected with SARS-CoV-2.  It violates medical ethics to expose someone to this risk when they have robust, durable immunity that actually neutralizes SARS-CoV-2 upon exposure.<br><br>(UC Faculty Decl. ¶ 22) | A.      Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703).  Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology. |
| | B.      Improper subject of lay witness testimony (Fed. R. Evid. § 701). |
| | C.      Lacks foundation; assumes facts not in evidence; vague, ambiguous, and misleading; improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).  Vague and ambiguous regarding the terms "risk" and "robust." |
| | D.      Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |
| | E.      Irrelevant and prejudicial (Fed. R. Evid. §§ 401, 403). |
| 18.      Studies have found that naturally immune individuals have significantly higher rates of adverse reactions when receiving the COVID-19 vaccine.  For example, Raw et al. reported that among 974 individuals vaccinated for COVID-19, the vaccinated COVID-19 recovered patients had higher rates of vaccine reactions.[42]  Mathioudakis et al. found the same result in a study of 2,002 individuals vaccinated for COVID-19.[43] Krammer et al. found the same result in a study of 231 volunteers vaccinated for COVID-19, concluding that, "Vaccine recipients with preexisting immunity experience systemic side effects with a | A.      Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703).  Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology. |
| | B.      Improper subject of lay witness testimony (Fed. R. Evid. § 701). |
| | C.      Improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704). |
| | D.      Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |

CROWELL & MORING LLP
ATTORNEYS AT LAW

-28-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| significantly higher frequency than antibody naïve vaccines."[44]<br><br>(UC Faculty Decl. ¶ 23) (citations omitted) | E.   Irrelevant and prejudicial (Fed. R. Evid. §§ 401, 403). |
| 19.   For example, according to the CDC, "Anaphylaxis after COVID-19 vaccination is **rare** and occurred in approximately **2 to 5 people per million** vaccinated in the United States based on events reported to VAERS."[46]<br><br>(UC Faculty Decl. ¶ 25) (citation omitted). | A.   Impermissible hearsay (Fed. R. Evid. § 802).<br><br>B.   Irrelevant (Fed. R. Evid. § 401).<br><br>C.   Misstates the evidence (Fed. R. Evid. § 403). |
| 20.   Reports of serious adverse events from COVID-19 vaccines are apparently similarly underreported to VAERS.<br><br>(UC Faculty Decl. ¶ 25) (citations omitted) | A.   Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.   Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.   Lacks foundation; assumes facts not in evidence; vague, ambiguous, and misleading; improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).  Vague and ambiguous regarding the phrase "serious adverse events" terms "" and "robust."<br><br>D.   Improper legal conclusion (Fed. R. Evid. §§ 701, 704).<br><br>E.   Irrelevant (Fed. R. Evid. §§ 401, 403). |
| 21.   This is equivalent to 50 to 120 times more cases than what VAERS and the CDC are reporting for a serious, potentially life-threatening, adverse event that occurs almost immediately after vaccination and which medical providers are advised they must watch for and report.<br><br>(UC Faculty Decl. ¶ 25) (citations omitted) | A.   Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.   Improper subject of lay witness testimony (Fed. R. Evid. § 701). |

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| | C.      Improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).<br><br>D.      Improper legal conclusion (Fed. R. Evid. §§ 701, 704).<br><br>E.      Irrelevant (Fed. R. Evid. §§ 401, 403). |
| 22.      If anaphylaxis is being underreported, the level of underreporting for serious adverse events that do not occur immediately after vaccination or are not easily identified is likely far greater.<br><br>(UC Faculty Decl. ¶ 26) | A.      Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.      Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.      Improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).<br><br>D.      Improper legal conclusion (Fed. R. Evid. §§ 701, 704).<br><br>E.      Irrelevant (Fed. R. Evid. §§ 401, 403). |
| 23.      Cases of thrombocytopenia have also occurred after COVID-19 vaccination, as well as serious and sometimes fatal blood clots.[49]<br><br>(UC Faculty Decl. ¶ 26) (citation omitted) | A.      Irrelevant (Fed. R. Evid. § 401).<br><br>B.      Misstates the evidence (Fed. R. Evid. § 403). |
| 24.      These and numerous other serious adverse events are being recognized but the true rate of these serious adverse events is most certainly underreported.[50]<br><br>(UC Faculty Decl. ¶ 26) | A.      Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.      Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.      Vague, ambiguous; improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).  Vague and |

CROWELL & MORING LLP
ATTORNEYS AT LAW

-30-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| | ambiguous regarding the phrase "serious adverse events." |
| | D.      Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |
| | E.      Irrelevant (Fed. R. Evid. §§ 401, 403). |
| | F. |
| 25.      Research shows that the coronavirus spike protein from COVID-19 vaccines enters the bloodstream and can be found throughout the body in almost all vital organs.<br><br>(UC Faculty Decl. ¶ 26 n.50) | A.      Irrelevant (Fed. R. Evid. § 401).<br><br>B.      Misstates the evidence; lacks foundation; assumes facts not in evidence (Fed. R. Evid. § 403). |
| 26.      This would help explain the high rate of reported blood clots, heart disease, brain damage and reproductive issues. Dr. Byram Bridle, a viral immunologist and associate professor at the University of Guelph, Ontario, recently stated: "We made a big mistake. We didn't realize it until now…We thought the spike protein was a great target antigen, we never knew the spike protein itself was a toxin and was a pathogenic protein.  So by vaccinating people we are inadvertently inoculating them with a toxin."<br><br>(UC Faculty Decl. ¶ 26 n.50) | A.      Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.      Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.      Improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).<br><br>D.      Improper legal conclusion (Fed. R. Evid. §§ 701, 704).<br><br>E.      Irrelevant (Fed. R. Evid. §§ 401, 403).<br><br>F.      Inadmissible hearsay (Fed. R. Evid. § 802). |
| 27.      Studies reflect that the SARS-CoV-2 spike protein from COVID-19 vaccines enters the bloodstream and can be found throughout the body in almost all vital organs.[51]<br><br>(UC Faculty Decl. ¶ 27) (citation omitted) | A.      Irrelevant (Fed. R. Evid. § 401).<br><br>B.      Misstates the evidence; lacks foundation; assumes facts not in evidence (Fed. R. Evid. § 403). |
| 28.      Vaccinating the naturally immune can lead to serious injury or death by | A.      Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). |

CROWELL & MORING LLP
ATTORNEYS AT LAW

-31-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| causing antigen specific tissue inflammation in any tissues harboring viral antigens.<br><br>(UC Faculty Decl. ¶ 28) (citation omitted) | Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.    Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.    Improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).<br><br>D.    Improper legal conclusion (Fed. R. Evid. §§ 701, 704).<br><br>E.    Lacks foundation; assumes facts not in evidence; vague, ambiguous, and misleading (Fed. R. Evid. §§ 403, 602, 701, 702, 704).  Vague and ambiguous regarding the phrase "serious injury or death by causing antigen specific tissue inflammation." |
| 29.    The ethical issue with exposing the naturally immune is compounded by the fact that the data on the safety and pharmacokinetic profiles of the spike protein have not been made available to the scientific community.<br><br>(UC Faculty Decl. ¶ 29) (citations omitted) | A.    Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.    Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.    Irrelevant (Fed. R. Evid. § 401). |
| 30.    Because previously infected individuals are already immune to SARS-CoV-2, the risks they face from COVID-19 vaccination, even if minimal, exceeds the benefit of receiving the vaccine.<br><br>(UC Faculty Decl. ¶ 31) | A.    Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.    Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.    Lacks foundation; assumes facts not in evidence; improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).  The declared statement does not identify specific "risks" or "benefits" considered to be able to verify what |

CROWELL & MORING LLP
ATTORNEYS AT LAW

-32-

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
|  | the evidence demonstrates, determine the reliability of the evidence, or draw conclusions therefrom.<br><br>D.     Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |
| 31.     Based on our communications with other University of California physicians and researchers, it is our understanding that many agree that mandating vaccination for individuals who have recovered from COVID-19 is unlikely to yield a health benefit, but they are reluctant to express this publicly due to concerns about employment security, academic promotion, or other repercussions.<br><br>(UC Faculty Decl. ¶ 32) | A.     Inadmissible hearsay (Fed. R. Evid. § 802).<br><br>B.     Irrelevant (Fed. R. Evid. § 401). |
| 32.     Based on the foregoing, we conclude that those who have been infected with SARS-CoV-2 are at least as protected as those vaccinated for COVID-19, are less likely to spread SARS-CoV-2 to others, and will be exposed to the potential harm from this vaccine without a counterbalancing benefit because they are already immune to the virus.<br><br>(UC Faculty Decl. ¶ 33) | A.     Non-qualified expert opinion (Fed. R. Evid. §§ 702, 703). Collectively, the declarants lack requisite knowledge, skill, experience, training, and/or education on issues related to epidemiology, immunology, or virology.<br><br>B.     Improper subject of lay witness testimony (Fed. R. Evid. § 701).<br><br>C.     Improper speculation (Fed. R. Evid. §§ 403, 602, 701, 702, 704).<br><br>D.     Improper legal conclusion (Fed. R. Evid. §§ 701, 704). |

DATED: September 3, 2021          CROWELL & MORING LLP


By:  */s/ Emily T. Kuwahara*
Emily T. Kuwahara
Kristin J. Madigan
Suzanne E. Rode
Uri Niv
Attorneys for Defendants
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA and MICHAEL V. DRAKE

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DEFENDANTS' OBJS. TO PLAINTIFF'S DECLS. ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO. 8:21-CV-01367-JVS-KES