UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 21-1367 JVS (KESx) | Date | September 29, 2021 |
| Title | Aaron Kheriaty v. Regents of the University of California, et al. | | |

Present: The Honorable  **James V. Selna, U.S. District Court Judge**

| Deborah Lewman | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

Not Present  Not Present

**Proceedings:**   **[IN CHAMBERS] Order Regarding Motion for Default Judgment and Permanent Injunction**

Plaintiff Aaron Kheriaty, M.D., ("Kheriaty") filed a motion for a preliminary injunction. Mot., Dkt. No. 15. Defendant Regents of the University of California ("The Regents") filed a response. Opp'n, Dkt. No. 22. Kheriaty filed a reply. Reply, Dkt. No. 31.

For the following reasons, the Court **DENIES** the motion.

**I. BACKGROUND**

*A.  Introduction*

This case concerns the constitutionality of the University of California's COVID-19 vaccine policy. On July 15, 2021, the Regents enacted the University of California Policy regarding the COVID-19 Vaccination Program ("Vaccine Policy") which requires all students, faculty, and staff, with limited exemptions, to be fully vaccinated against COVID-19 before accessing University of California ("University") facilities. Vaccine Policy, Dkt. No. 15-2, Ex. B, at 2. Kheriaty is a professor of Psychiatry and Human Behavior at the University of California Irvine ("UCI") School of Medicine and the director of the Medical Ethics Program at the UCI School of Medicine. Kheriaty Decl., Dkt. No. 15-2, ¶ 7. As an employee of UCI, Kheriaty is subject to the Vaccine Policy. Kheriaty Decl. ¶ 4. Kheriaty contracted COVID-19 in July of 2020 and has since fully recovered. Kheriaty Decl. ¶ 2. Kheriaty seeks an injunction preventing the Regents from enforcing the Vaccine Policy against him because he alleges that his prior infection gives him superior immunity to COVID-19 than vaccinated individuals. Compl., Dkt. No. 1, ¶ 10.

*B.  COVID-19*

SARS-CoV-2, the virus that causes COVID-19, likely first infected humans in November of 2019. Reingold Decl., Dkt. No. 22-4, ¶ 8. In the nearly two years since, the COVID-19 pandemic

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 21-1367 JVS (KESx) | Date | September 29, 2021 |
| Title | Aaron Kheriaty v. Regents of the University of California, et al. | | |

upended everyday life across the globe. Since the first cases were detected in the United States in early 2020, the United States has diagnosed over 42 million cases of COVID-19 and more than 670,000 Americans died from COVID-19.[1] While the true number may be higher, there are more than two million documented hospitalizations of people with COVID-19 in the United States. Crotty Decl., Dkt. No. 22-3, ¶ 8. Older populations and individuals with preexisting immunosuppressive conditions are more susceptible to severe complications from COVID-19. Reingold Decl. ¶ 12. However, the impact is not limited to a particular segment of the population. Individuals over the age of 50 make up one quarter of total hospitalizations, and over 117,000 Americans between the ages of eighteen and twenty-nine were hospitalized with COVID-19 in the past year. Crotty Decl. ¶ 8.

The impacts of a SARS-CoV-2 infection can extend beyond the immediate threat of COVID-19 to an individual's health. It is known to cause severe illnesses, including Multisystem Inflammatory Syndrome in Children and Multisystem Inflammatory Syndrome in Adults, as well as "long COVID," a descriptor for a lingering set of symptoms. Reingold Decl. ¶ 12. When the community-wide prevalence of COVID-19 reaches a certain threshold, it also impacts the ability of healthcare facilities to provide the typical standard of care. de St. Maurice Decl., Dkt. No. 22-7, ¶ 7.

The trajectory of COVID-19 has fluctuated dramatically throughout the United States. After cases appeared to be on the wane in the spring and early summer of 2021, infection rates and hospitalizations dramatically increased in recent months. Reingold Decl. ¶ 13. As of September 17, 2021, the seven-day moving average of new COVID-19 cases in the United States was over 146,000 new cases a day, with a seven-day moving average of more than 1,400 deaths per day.[2] California is not at the epicenter of the current surge, yet the state is still averaging more than 9,000 COVID-19 infections per day and over 120 deaths per day from COVID-19.[3] The current spike in infections is driven by the Delta Variant, a more infectious form of SARS-CoV-2 that became the dominant form of COVID-19 in the United States as of July 2021. Byington Decl., Dkt. No. 22-5, ¶ 6.

  C. *COVID-19 Vaccines*

The global effort to develop vaccines began in early 2020, shortly after SARS-CoV-2 was identified as the cause of COVID-19. Reingold Decl. ¶ 15. As of September 2021, there are three

---

[1] Data current as of September 21, 2021. For updated statistics, see CDC, Covid Data Tracker, available at https://covid.cdc.gov/covid-data-tracker/#datatracker-home.

[2] Data current as of September 18, 2021. For updated statistics, see CDC, COVID Data Tracker Weekly Review, available at https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html.

[3] Data current as of September 18, 2021. For updated statistics, see New York Times, Coronavirus in the U.S.: Latest Map and Case Count, available at https://www.nytimes.com/interactive/2021/us/covid-cases.html.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 21-1367 JVS (KESx) | Date | September 29, 2021 |
| Title | Aaron Kheriaty v. Regents of the University of California, et al. | | |

COVID-19 vaccines available in the United States. Reingold Decl. ¶ 15. After extensive trials and review of safety and efficacy data, the United States Food and Drug Administration ("FDA") issued emergency use authorizations for the Moderna and Johnson & Johnson vaccines, and full approval to the Pfizer vaccine. Crotty Decl. ¶ 15. By September 18, 2021, over 384 million doses of the COVID-19 vaccine have been administered in the United States.[4] The parties disagree about the safety and effectiveness of the COVID-19 vaccines, as well as the relative merits of vaccine-induced immunity compared with infection-induced immunity. The Court briefly reviews their positions here, not to determine which party is correct, but simply to highlight the points of contention.

The first area of disagreement is the safety of the COVID-19 vaccines. The Regents rely on Centers for Disease Control ("CDC") statements that "COVID-19 vaccines are safe and effective," and that "serious side effects that could cause a long-term health problem are extremely unlikely." CDC, Safety of COVID-19 Vaccines, Dkt. No. 22-9, Ex. 2, at 1-2. According to the CDC, "no long-term side effects have been detected" from the hundreds of millions of doses of COVID-19 vaccines administered to date. Id. at 14. The Regents' medical experts specifically note that clinical trials for COVID-19 vaccines included previously infected individuals, and cite to studies finding that vaccine safety is the same for previously infected individuals as it is for individuals who have never had COVID-19. Crotty Decl. ¶¶ 16-19, 40. Additionally, the CDC currently recommends that individuals who have previously been infected with COVID-19 receive the vaccination. CDC, Frequently Asked Questions about COVID-19, Dkt. No. 22-9, Ex. 3, at 1.

Kheriaty argues that user-reported entries into the CDC's Vaccine Adverse Event Reporting System show that the rate of serious reactions to the COVID-19 vaccine are significantly higher than indicated by CDC tracking. Kheriaty Decl. ¶¶ 22-25. Additionally, Kheriaty asserts that post-vaccination cases of myocarditis, pericarditis, thrombocytopenia, and blood clots could be linked to COVID-19 vaccination. Declaration of Joseph Ladapo, MD, Phd, et al. ("Ladapo Decl."), Dkt. No. 15-4, ¶ 26. Kheriaty also points to three studies suggesting that there may be higher rates of vaccine reactions among individuals who have previously had COVID-19. Ladapo Decl. ¶ 23.

Next, the parties disagree on the effectiveness of the COVID-19 vaccines at preventing infections. The Regents cite to evidence showing that the vaccines remain highly effective, including against the Delta variant. Crotty Decl. ¶¶ 22, 45-46. They present data showing a 93% reduction in transmissions for a vaccinated individual compared to an unvaccinated individual because of the decrease in infections and shorter window of time for transmission. Crotty Decl. ¶ 46. Some studies also show that previously infected individuals who are vaccinated have a more potent immune response and recognize variants better than unvaccinated individuals with infection-induced immunity. Crotty Decl. ¶ 26.

---

[4] Data current as of September 18, 2021. For updated statistics, see CDC, COVID-19 Vaccinations in the United States, available at https://covid.cdc.gov/covid-data-tracker/#vaccinations_vacc-total-admin-rate-total.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1367 JVS (KESx) | Date | September 29, 2021 |
|---|---|---|---|

| Title | Aaron Kheriaty v. Regents of the University of California, et al. |
|---|---|

Kheriaty takes the opposite view of the effectiveness of the COVID-19 vaccines. Among other sources, he cites to a study of a community outbreak that found that most individuals who were infected were previously vaccinated, Ladapo Decl. ¶ 19, and a statement from the CDC Director during a CNN appearance that the vaccines cannot prevent transmission any longer. Ladapo Decl. ¶ 20. Kheriaty also points to studies of monkeys suggesting that the COVID-19 vaccines do not fully block viral infection and replication. Ladapo Decl. ¶ 18.

Finally, the parties disagree on the scientific certainty regarding the effectiveness of infection-induced immunity. While the Regents acknowledge that data supports the theory that previously infected individuals have "some level of immunity," they argue that the "scientific consensus regarding infection-induced immunity is still developing." Opp'n at 6. They cite to a large study from the United Kingdom showing that vaccine-induced immunity was "somewhat better" than infection-induced immunity. Crotty Decl. ¶ 49. Their experts also raise concerns that "neither the completeness nor the durability of protection" provided by infection-induced immunity has been established. Reingold Decl. ¶ 21. Looking forward, they express concerns that infection-induced immunity may provide less protection against emerging variants than "hybrid immunity" (a descriptor for someone who has both had a prior SARS-Cov-2 infection and received a COVID-19 vaccine). Crotty Decl. ¶ 27. Finally, they note that the FDA and CDC do not recommend the use of current antibody tests to determine whether a particular individual has immunity to SARS-Cov-2 infection. Reingold Decl. ¶ 22.

Meanwhile, Kheriaty asserts that infection-induced immunity is definitively more than 99% effective at preventing reinfection. Mot. at 7-8; see Ladapo Decl. ¶ 14. As support for that proposition, he relies on the fact that as of May 2021 there were no documented cases of re-infected individuals contracting SARS-Cov-2 and transmitting the virus. Ladapo Decl. ¶ 12; McCullough Decl. ¶ 17. Kheriaty's experts present several studies finding that infection-induced immunity lasts for at least several months. Ladapo Decl. ¶ 8. They also cite to a selection of studies from Israel, French Guiana, the Cleveland Clinic, and UCLA suggesting that infection-induced immunity may be more effective than vaccine-induced immunity. Ladapo Decl. ¶ 11. In light of those data, Kheriaty reaches the conclusion that infection-induced immunity "confers an additional benefit" over vaccine-induced immunity. Mot. at 11.

    D.    *University of California Vaccine Policy*

Throughout the pandemic, the Regents adopted numerous new University-wide policies in response to rapidly changing public health conditions and scientific knowledge. See Drake Decl. ¶ 7; Bolden-Albala Decl., Dkt. No. 22-6, ¶ 4; Kheriaty Decl. ¶ 9. After more than a year of online instruction, the University is resuming in-person activities this fall, with more than 280,000 students and over 227,000 faculty and staff returning to locations across the state of California. Boden-Albala Decl. ¶ 8. On July 15, 2021, the Regents issued the Vaccine Policy "to maintain the health and well-being of the campus community and that of the general public." Drake Letter, Dkt. No. 22-8, Ex. A, at 1. The Regents formulated the Vaccine Policy through consultation with "infectious disease experts and ongoing review of the evidence from medical studies concerning the dangerousness of COVID-19 and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 21-1367 JVS (KESx) | Date | September 29, 2021 |
| Title | Aaron Kheriaty v. Regents of the University of California, et al. | | |

emerging variants of concern, as well as the safety and effectiveness of the vaccines." Id.

The Vaccine Policy requires every member of the campus community, including students, faculty, and staff, to receive a COVID-19 vaccination as a condition of access to University facilities. Id. The Vaccine Policy does provide exceptions on the basis of medical exemption, disability, or religious objection. Vaccine Policy at 3. However, an individual with documentation of a recent COVID-19 diagnosis or an antibody test showing infection-induced immunity is only eligible to apply for a temporary medical exemption of up to 90 days. Vaccine Policy at 11. Elaborating on the rationale for that decision, the Vaccine Policy quotes an FDA publication stating that "a positive result from an antibody test does not mean you have a specific amount of immunity or protection from SARS-CoV-2 infection . . . Currently authorized SARS-CoV-2 antibody tests are not validated to evaluate specific immunity or protection from SARS-CoV-2 infection." Vaccine Policy at 11 (quoting FDA Safety Communication, Antibody Testing Is Not Currently Recommended to Assess Immunity After COVID-19 Vaccination, Dkt. No. 22-9, Ex. 4).

    *E.*    *Procedural History*

On August 18, 2021, Kheriaty filed his complaint seeking declaratory and injunctive relief based on the alleged unconstitutionality of the Vaccine Policy. Compl., Dkt. No. 1. On August 23, 2021, Kheriaty filed the instant motion for this preliminary injunction. Mot., Dkt. No. 15. On September 14, 2021, after briefing closed, the Regents moved to dismiss this motion. Mot. to Dismiss, Dkt. No. 32. On September 17, 2021, the Regents filed an answer to the complaint. Answer, Dkt. No. 34. In reaching this ruling, the Court has not considered any additional materials beyond the briefing on this motion.

## II. LEGAL STANDARD

On an application for a preliminary injunction, the plaintiff has the burden to establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm if the preliminary relief is not granted, (3) the balance of equities favors the plaintiff, and (4) the injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 5, 20 (2008).

In the Ninth Circuit, the Winter factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011). "To reach this sliding scale analysis, however, a moving party must, at an 'irreducible minimum,' demonstrate some chance of success on the merits." Global Horizons, Inc. v. U.S. Dep't of Labor, 510 F.3d 1054, 1058 (9th Cir. 2007) (citing Arcamuzi v. Cont'l Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987)).

## III. DISCUSSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 21-1367 JVS (KESx) | Date | September 29, 2021 |
| Title | Aaron Kheriaty v. Regents of the University of California, et al. | | |

  *A.*  *Standing*

  As a threshold matter, the Regents contend that Kheriaty lacks standing because his injury is not redressable by a favorable decision. Mot. at 10. The constitutional minimum for standing requires an injury in fact, a causal connection between the injury and the defendant's action, and a showing that a favorable decision will likely redress the injury. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). The Regents argue that a separate California Department of Health mandate that "all health care workers must be vaccinated" by September 30, 2021 would prevent a favorable decision in this case from redressing Kheriaty's injury. State Public Health Officer Order of August 5, 2021 ("Department of Health Order"), Dkt. No. 22-9, Ex. 1, at 2.

  As Kheriaty notes, the Vaccine Policy will impact his professional activities in ways that fall outside of the scope of the Department of Health Order. For instance, if he were to remain unvaccinated, the Vaccine Policy would limit his ability to enter the UCI campus or teach in a classroom setting, which are not covered by the Department of Health Order. Kheriaty has thus sufficiently alleged an injury that can be redressed. See Ariz. Attorneys for Criminal Justice v. Brnovich, -- Fed. App'x --, 2021 WL 3743888, at *2 ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury.") (quoting Larson v. Valente, 456 U.S. 228, 243 n.15 (1982)).

  The Regents do not challenge the other standing requirements. Accordingly, the Court finds that Kheriaty has standing to bring a challenge against the UC Vaccine Policy.

  *B.*  *Likelihood of Success on the Merits*

  The Court begins by considering the likelihood that Kheriaty's complaint will succeed on the merits, the most important factor in the preliminary injunction analysis. See Garcia v. Google, Inc., 786 F.3d 733 (9th Cir. 2015). Kheriaty's complaint alleges two violations of the Fourteenth Amendment, one based on equal protection and one based on substantive due process. Compl. ¶¶ 63-87. The Court begins by considering Kheriaty's substantive due process claim.

    *i.*  *Standard of Review Under the Due Process Clause*

  "To state a prima facie substantive or procedural due process claim, one must, as a threshold matter, identify a liberty or property interest protected by the Constitution." United States v. Guillen-Cervantes, 748 F.3d 870, 872 (9th Cir. 2014). The Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." Washington v. Glucksberg, 521 U.S. 702, 720 (1997). Supreme Court jurisprudence "establish[es] a threshold requirement–that a challenged state action implicate a fundamental right–before requiring more than a reasonable relation to a legitimate state interest to justify the action." Glucksberg, 521 U.S. at 722. To determine the correct level of scrutiny to apply, the Court first looks to whether Kheriaty has identified a fundamental right that is violated by the Vaccine Policy.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 21-1367 JVS (KESx) | Date | September 29, 2021 |
| Title | Aaron Kheriaty v. Regents of the University of California, et al. | | |

Kheriaty first argues that the Vaccine Policy violates his fundamental right to bodily integrity. Mot. at 20-21. As support, he relies on "[t]he principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." Cruzan v. Director, Mo. Dep't of Health, 497 U.S. 261, 278 (1990). However, the Supreme Court follows a "tradition of carefully formulating the interest at stake in substantive-due-process cases." Glucksberg, 521 U.S. at 722. In Glucksberg, the Supreme Court clarified that the Cruzan holding narrowly "assumed that the Constitution granted competent persons a 'constitutionally protected right to refuse lifesaving hydration and nutrition.'" Glucksberg, 521 U.S. at 723 (quoting Cruzan, 497 U.S. at 279). The Vaccine Policy clearly implicates different liberty interests from Cruzan. Kheriaty is not refusing "lifesaving hydration and nutrition." Instead, he is seeking an injunction against an employer mandate to take a vaccine with the stated purpose of not only protecting himself against an infectious disease, but also protecting the broader community at large.

As the Regents note, the Supreme Court previously considered the carefully formulated liberty interest at stake here. In Jacobson v. Massachusetts, the Court considered a challenge to a Massachusetts law allowing cities to enforce vaccination for smallpox under penalty of fines if "necessary for the public health or safety." 197 U.S. 11, 12 (1905). The Court held that "the police power of a state must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and the public safety." Id. at 25. Notably, the Court deferred to the policymaking role of the State, finding that judicial intervention would only be appropriate if the statute had "no real or substantial relation" to public health, morals, or safety despite its purported purpose. Id. at 31.

While the case predates the formalized tiers of review, the Court later acknowledged that Jacobson "essentially applied rational basis review." Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring). Indeed, in the intervening century, courts routinely applied rational basis review when considering challenges to vaccine policies. See Klaasen v. Trs. of Ind. Univ., -- F. Supp. 3d --, 2021 WL 3073926, at *24 (N.D. Ind. July 18, 2021) (collecting cases). Other courts continued to apply that same standard when evaluating challenges to vaccine policies issued during the COVID-19 pandemic. See Klaasen, 2021 WL 3073926, at *24; Harris v. Univ. of Mass., 2021 WL 3848012, at *6 (D. Mass. Aug. 27, 2021).

To be clear, that does not mean that a court must find any vaccination effort to be constitutional. As the Supreme Court recently emphasized, "even in a pandemic, the Constitution cannot be put away and forgotten." Diocese of Brooklyn, 141 S. Ct. at 68. But the Diocese of Brooklyn court applied strict scrutiny because the challenged regulation's impact on religious institutions "str[uck] at the very heart of the First Amendment's guarantee of religious liberty," not because the policies were promoting public health. Id. at 68. Kheriaty does not allege any infringement of religious liberty in this case. See also Policy at 3-4 (providing exceptions for medical reasons, disability, and for religious objections based on a person's "sincerely held religious belief, practice, or observance").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 21-1367 JVS (KESx) | Date | September 29, 2021 |
| Title | Aaron Kheriaty v. Regents of the University of California, et al. | | |

    Alternatively, Kheriaty argues that the UC Vaccine Policy implicates his fundamental right to informational privacy by requiring disclosure of vaccination status to his employers. Mot. at 22-23. The Ninth Circuit recognizes an "individual interest in avoiding disclosure of personal matters." In re Crawford, 194 F.3d 954, 958 (9th Cir. 1999) (internal quotations omitted). Medical information falls within the scope of that right. See Nelson v. Nat'l Aeronautics & Space Admin., 530 F.3d 865, 877 (9th Cir. 2008). The right to informational privacy, however, is "a conditional right which may be infringed upon a showing of proper governmental interest." Crawford, 194 F.3d at 959. "Legitimate governmental interests combined with protections against public dissemination can foreclose a constitutional violation." Endy v. County of Los Angeles, 975 F.3d 757, 768 (9th Cir. 2020).

    The Regents adopted a policy that requires knowing which members of the campus community are vaccinated in an effort to combat COVID-19. "Stemming the spread of COVID-19 is unquestionably a compelling interest." Diocese of Brooklyn, 141 S. Ct. at 67. Thus, the Regents have shown a legitimate governmental interest in receiving the information of whether employees and students are vaccinated. Additionally, the Vaccine Policy expressly states that "the University will not disclose vaccine status . . . except on a need-to-know basis." Vaccine Policy at 11. Combined with the legitimate governmental interest in receiving the information, these protections against publicly sharing Kheriaty's vaccination status foreclose a constitutional violation under Ninth Circuit precedent. See Endy, 975 F.3d at 768.

    The Court finds that Kheriaty has not established that the Vaccine Policy implicates a fundamental right. Accordingly, rational basis review is the appropriate standard to apply to the substantive due process claim.

        ii.    *Standard of Review Under the Equal Protection Clause*

    Alternatively, Kheriaty argues that the Policy violates the Equal Protection Clause. The Equal Protection Clause mandates that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Cent., 473 U.S. 432, 439 (1985). To prevail on an equal protection claim, a plaintiff must "show that a class that is similarly situated has been treated disparately." Boardman v. Inslee, 978 F.3d 1092, 1117 (9th Cir. 2020). If the identifiable group is recognized as a suspect or quasi-suspect class, courts examine the classification under a heightened level of scrutiny. Cleburne, 473 U.S. at 440; see Regents v. Bakke, 438 U.S. 265, 290-91 (1978) (Powell, J.) (treating race as a suspect classification); Craig v. Boren, 429 U.S. 190, 197 (1976) (treating gender as a quasi-suspect classification). Outside of the limited number of traits that have been recognized as suspect or quasi-suspect classes, courts apply rational basis review. See, e.g., Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 312 (1976) (applying rational basis review to an equal protection claim alleging discrimination based on age). If there is no suspect class at issue, differential treatment is presumed to be valid so long as it is "rationally related to a legitimate state interest." Cleburne, 473 U.S. at 440. Thus, to determine the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 21-1367 JVS (KESx) | Date | September 29, 2021 |
|---|---|---|---|

| Title | Aaron Kheriaty v. Regents of the University of California, et al. | | |
|---|---|---|---|

appropriate standard of review of an Equal Protection Clause claim, the first step is to determine the type of classification at issue.

Kheriaty identifies the two classes that the Vaccine Policy treats disparately as individuals who have vaccine-induced immunity and individuals who have infection-induced immunity. Mot. at 16. While Kheriaty is correct that the Vaccine Policy treats those two groups differently, the Regents take the position that "[t]he Policy does not target a suspect class." Opp'n at 11. The Court agrees with the Regents. Whether the class here is formulated as "non-vaccinated individuals," "individuals who have previously had COVID-19," or "non-vaccinated individuals with immunity to COVID-19," Kheriaty presents no authority to show that any court has found a similar classification to be suspect or quasi-suspect. See Ball v. Massanari, 254 F.3d 817, 823-24 (9th Cir. 2001) (declining to find that alcoholics are a suspect or quasi-suspect class while noting that the Supreme Court has extended heightened scrutiny to classifications based on race, sex, national origin, alienage, and illegitimacy).

In arguing for the application of strict scrutiny, Kheriaty cites Culinary Studios, Inc. v. Newsom for the proposition that "[a] public health emergency does not give rise to an alternative standard of review." 517 F. Supp. 3d 1042, 1063 (E.D. Cal. 2021). While the general proposition is correct, Kheriaty is in fact the party seeking an alternative standard of review. See Reply at 3 (arguing that strict scrutiny applies because "Plaintiff is asserting a violation of equal protection because Defendants are treating differently two groups, both of which are immune to SARS-CoV-2"). As discussed above, courts apply rational basis review to an equal protection claim unless there is a suspect or quasi-suspect classification at issue. Kheriaty provides no precedent showing a court that extended the heightened protections provided to other suspect or quasi-suspect classes to vaccination status. This Court declines to do so here as well.

Accordingly, the Court applies rational basis review to Kheriaty's Equal Protection claim, the typical standard where there is not a suspect class at issue.

### iii.   *Application of Rational Basis Review*

The rational basis review test is functionally the same under substantive due process and the Equal Protection Clause. Gamble v. City of Escondido, 104 F.3d 300, 307 (9th Cir. 1997). Substantive due process only requires a rational relationship between the challenged policy and a legitimate governmental objective. Brach v. Newsom, 6 F.4th 904, 924 (9th Cir. 2021). "Governmental action is rationally related to a legitimate goal unless the action is clearly arbitrary and unreasonable, having no substantial relation to public health, safety, morals, or general welfare." Sylvia Landfield Trust v. City of Los Angeles, 729 F.3d 1189, 1193 (9th Cir. 2013) (internal quotations omitted).

Under the Equal Protection Clause, if there is no suspect class at issue a policy "need only rationally further a legitimate state purpose to be valid." Minn. State Bd. for Cmty. Colls. v. Knight, 465 U.S. 271, 291 (1984) (internal quotations omitted). The Equal Protection Clause is satisfied so long as there is a "plausible policy reason for the classification," the government decisionmaker relied on facts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 21-1367 JVS (KESx) | Date | September 29, 2021 |
| Title | Aaron Kheriaty v. Regents of the University of California, et al. | | |

that "may have been considered to be true," and "the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." Nordlinger v. Hahn, 505 US 1, 11 (1992). "Given the standard of review, it should come as no surprise [courts] hardly ever strike[] down a policy as illegitimate under rational basis scrutiny." Trump v. Hawaii, 138 S. Ct. 2392, 2420 (2018).

    The two-tiered rational basis inquiry first asks whether the challenged law has a legitimate purpose, then whether the challenged law promotes that purpose. Erotic Serv. Provider Legal Educ. and Research Project v. Gascon, 880 F.3d 450, 457 (9th Cir. 2018). The Court finds that the Vaccine Policy easily satisfies that inquiry. First, the Regents describe a clear goal of maintaining the health and well being of the campus community. Oppn at 14-15. "Stemming the spread of COVID-19 is unquestionably a compelling interest." Diocese of Brooklyn, 141 S. Ct. at 67. Next, while formulating the Vaccine Policy, the Regents considered extensive peer-reviewed data showing vaccination as an effective strategy to combat the spread of COVID-19. Oppn. at 15-16. This is sufficient to establish that the Vaccine Policy rationally furthers a legitimate state purpose.

    Kheriaty argues that the Vaccine Policy cannot survive rational basis review because the distinction between individuals with vaccine-induced immunity and infection-induced immunity is arbitrary and irrational. Reply at 9-10. The Regents, however, made a considered decision to only provide a temporary exemption for previously infected individuals. Opp'n at 16. Relying on experts who reviewed the current status of research and underlying data, the Regents reached the conclusion that they could not justify allowing individuals with prior COVID-19 infections to opt out of the vaccination requirement because "doing so would put the greater UC community at risk." Opp'n at 16. Kheriaty and the experts he relies on draw a different conclusion based on their perception of the current medical science. Reply at 9-10.

    But merely drawing different conclusions based on consideration of scientific evidence does not render the Vaccine Policy arbitrary and irrational. The Regents have met their burden under rational basis review. They considered the evidence and developed a policy that rationally furthers a legitimate state purpose. The role of this Court is not to make policy decisions about the exact scope of the policy that is appropriate. "Plaintiffs argue that a growing body of scientific evidence demonstrates that vaccines cause more harm to society than good, but as Jacobson made clear, that is a determination for the legislature, not the individual objectors." Phillips v. City of New York, 775 F.3d 538, 542 (2d Cir. 2015). That is particularly true here, where the scientific understanding of COVID-19 is rapidly developing. See also Vance v. Bradley, 440 U.S. 93, 108 (1979) (holding that even if a classification is "to some extent both underinclusive and overinclusive and hence the line drawn [is] imperfect," perfection is not required).

    Kheriaty also suggests that the goal of the Vaccine Policy is to discriminate against the unvaccinated, who he describes as "a politically unpopular group." Mot. at 20. "[A] bare [] desire to harm a politically unpopular group cannot constitute a legitimate governmental interest" under the Equal Protection Clause. Romer v. Evans, 517 U.S. 620, 634 (1996) (internal quotation omitted). But where there is no suspect class at issue, a challenged law may only be struck down on the basis of animus "if

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 21-1367 JVS (KESx) | Date | September 29, 2021 |
| Title | Aaron Kheriaty v. Regents of the University of California, et al. | | |

the statute serves no legitimate governmental purpose and if impermissible animus toward an unpopular group prompted the statute's enactment." Boardman, 978 F.3d at 1119 (quoting Animal Legal Def. Fund v. Wasden, 878 F.3d 1184, 1200 (9th Cir. 2018)).

Given that the Court has already found that the Vaccine Policy serves legitimate state interests, an animus claim under the Equal Protection Clause cannot prevail. See Boardman, 978 F.3d at 1119. The Court also notes that while the Regents present extensive scientific evidence explaining the legitimate reasons behind their decision to issue the Vaccine Policy, Kheriaty presents nothing more than mere conclusory statements to support his claim of animus or his assertion that unvaccinated individuals constitute a politically unpopular group.

The Vaccine Policy satisfies rational basis review under both substantive due process and the equal protection clause. Thus, the Court finds that Kheriaty has not shown a likelihood of success on the merits.

   C.  *Irreparable Harm, Balance of the Harms, Public Interest*

Within the Ninth Circuit, "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies, 632 F.3d at 1134-35. At this stage, Kheriaty has not only failed to show a likelihood of success, he has not raised serious questions going to the merits.

Even if the Court found that Kheriaty had raised serious questions going to the merits, the other factors would weigh against granting a preliminary injunction. The balance of equities tips sharply towards the Regents. The Regents are attempting to protect a campus community of more than half a million students, faculty, and staff from a deadly infectious disease. This far outweighs any harm Kheriaty may face in choosing between receiving a medically-approved vaccination or suffering undetermined employment-related consequences. The public interest also weighs heavily in favor of the Regents. See Bruesewitz v. Wyeth LLC, 562 U.S. 223, 226 (2011) (describing "the elimination of communicable diseases through vaccination" as "one of the greatest achievements of public health in the 20th century") (internal quotations omitted). The Vaccination Policy not only impacts the members of the campus community who it directly applies to, but also provides indirect protections to other members of the public at large, including the patients that Kheriaty sees in his practice as a psychiatrist.

In light of the failure to raise serious questions going to the merits, the balance of hardships that weighs heavily towards the Regents, and the strong public interest that weighs against an injunction, the Court finds that a preliminary injunction is not appropriate in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 21-1367 JVS (KESx) | Date | September 29, 2021 |
| Title | Aaron Kheriaty v. Regents of the University of California, et al. | | |

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion.

**IT IS SO ORDERED.**

|  | : | 0 |
|---|---|---|
| Initials of Preparer | djl | |